### The RAJBIR AND SASHA SANDHU TRUST,

v.

### SANDHU, INC., Defendant/Third–Party Plaintiff,

v.

### Baldev S. Sandhu, Third–Party Defendant,

### Baldev S. Sandhu, Appellant.

No. 02–2205.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) July 14, 2003.

Decided Aug. 6, 2003.

Before McKEE and BARRY, Circuit Judges, and ROSENN, Senior Circuit Judge.

## OPINION

McKEE, Circuit Judge.

Baldev S. Sandhu appeals from the district court's grant of summary judgment against him on Sandhu, Inc.'s, third-party complaint in which Sandhu, Inc., alleged that Baldev breached a 1996 Settlement Agreement by bringing this litigation against Sandhu, Inc. Baldev also claims that the district court erred by entering judgment in favor of Sandhu, Inc., and against him, awarding attorneys' fees, costs and expenses in the amount of $93,822.04.

## I.

On October 4, 1991, Baldev Sandhu entered into a contract to purchase the Ramada Inn Hotel in Tyler, Texas from the Federal Deposit Insurance Corporation for $3.2 million. Baldev claims that he entered into that contract after discussions with, and the approval of, his father, Sohan Sandhu. Sandhu, Inc., a Texas corporation, was formed with Sandhu Baldev's half-brother, Jatinderpaul Sandhu, as the director, president and sole shareholder of the corporation and with Baldev Sandhu as the secretary. The corporation was formed as part of Baldev's efforts to acquire the hotel.

On February 26, 1992, the day of closing on the hotel, Baldev Sandhu assigned his right to purchase the hotel to Sandhu, Inc. That same day, Baldev Sandhu, claiming that he was acting as secretary of Sandhu, Inc., executed an agreement that provided that on February 26, 1997, five years after the closing, Sandhu, Inc. would issue sufficient capital stock to the Rajbir and Sasha

Sandhu Trust to ensure that the Trust would have a two-thirds controlling interest in Sandhu, Inc. Although Baldev is the settlor of the Trust and its beneficiaries are Baldev's minor children, Rajbir and Sasha, it is undisputed that at the time of the purported agreement to transfer the stock, the trust was not in existence. Apparently, a deed of trust was not executed until some time in 1997, shortly before the date when the stock transfer was to be made in accordance with the terms of the alleged agreement.

According to Baldev, the consideration for this agreement was his assignment of the purchase contract and funds to purchase the hotel to Sandhu, Inc. However, there is a dispute as to who actually provided the funds to purchase the hotel. Baldev claims that he personally provided some portion of the $3.2 million, while Sandhu, Inc., claims that the $3.2 million came from Surinder Kaur Sandhu, Jatinderpaul Sandhu's mother and Baldev's stepmother.

In any event, it appears that the agreement to issue the stock to the Trust was not disclosed at closing. Moreover, Jatinderpaul Sandhu, the sole director and shareholder of Sandhu, Inc., claims that he never authorized any agreement for Sandhu, Inc., to issue any stock to the Trust. By letter dated January 8, 1993, Jatinderpaul notified Baldev that he, Baldev, was no longer the secretary of Sandhu, Inc., and that the corporation would repudiate all acts undertaken by Baldev in his capacity as secretary of the corporation that were not specifically authorized by Jatinderpaul as the director of the corporation.

When Sandhu, Inc., did not issue the stock to the Trust on February 26, 1997, the Trust filed an action in the district court alleging that Sandhu, Inc., breached the February 26, 1992 agreement to issue two-thirds of the stock of the corporation to the Trust. Sandhu, Inc., filed an answer to the Trust's complaint and further responded with a counterclaim against the Trust and a complaint against third-party defendant Baldev. Sandhu, Inc.'s, counterclaim asserted a malicious prosecution action against the Trust and its third-party complaint alleged that Baldev's action against it was a breach of an August 1996 Settlement Agreement. That Settlement Agreement arose out of a Texas divorce action involving Sohan Sandhu (Baldev's and Jatinderpaul's father), and Sohan's first wife, Surjit Kaur Sandhu (Baldev's mother). Among the putative marital assets in that divorce action were the assets of Sandhu, Inc. In time, Sandhu, Inc., filed a motion for summary judgment on the Trust's claim and on its third-party complaint against Baldev. The Trust filed a motion for summary judgment on the counterclaim. On May 25, 1999, the district court denied Sandhu, Inc.'s, motion for summary judgment on the Trust's claim and on Sandhu's third-party complaint against Baldev. It also granted the Trust's motion for summary judgment on Sandhu, Inc.'s, malicious prosecution counterclaim against Trust.

Thereafter, the district court made certain *in limine* evidentiary rulings and after further briefing by the parties, it revisited Sandhu, Inc.'s, summary judgment motion on the Trust's breach of the agreement to transfer stock claim and on Sandhu, Inc.'s, third-party complaint against Baldev. The district court granted summary judgment to Sandhu, Inc., in the suit between the Trust and Sandhu, Inc. The court found that: (1) the Trust was not in existence on February 26, 1992 and, therefore, it could not have entered into an agreement with Sandhu, Inc., to issue two-thirds of Sandhu, Inc.'s, stock to it; (2) Baldev, as secretary of Sandhu, Inc., lacked the authority to bind the corpora-

tion to issue the stock; (3) Sandhu, Inc., could not issue such stock under Texas law; (4) the corporation operated with legal formalities; and (5) Baldev was not a de facto director of Sandhu, Inc. The Trust did not file an appeal from the district court's grant of summary judgment to Sandhu, Inc.

With regard to Sandhu, Inc.'s, third-party complaint against Baldev, in which Sandhu, Inc., alleged that Baldev breached the 1996 Settlement Agreement by bringing this action against it, the district court held that Baldev, individually and as trustee, was a party and signatory to that Settlement Agreement and that Agreement barred Baldev and the Trust from bringing this action against Sandhu, Inc. Accordingly, the court held that Baldev's initiation of this action was a breach of the 1996 Texas agreement. On October 8, 1999, the district court held that since Baldev breached that agreement he was liable to Sandhu, Inc., for compensatory damages, counsel fees and expenses, pursuant to an Indemnity Clause in the Agreement. Therefore, the district court granted summary judgment as to liability only against Baldev and in favor of Sandhu, Inc. However, the district court did not determine the amount of damages, etc., at that time. Instead, it directed Sandhu, Inc., to submit affidavits of services, costs and expenses for the court's later consideration. Baldev filed an appeal from the district court's October 8, 1998 grant of summary judgment, but he only appealed the issue of his liability to Sandhu, Inc., for his breach of the 1996 Settlement Agreement.

On January 11, 2001, after Sandhu, Inc., filed the affidavits as directed by the district court's October 8, 1999 order, the district court ordered that judgment be entered in favor of Sandhu, Inc., against Baldev "for the total amount of $93,822.04 inclusive of counsel fees, costs and expenses." However, Baldev did not file an appeal from that order.

As noted, Baldev appealed the district court's grant of summary judgment against him on Sandhu, Inc.'s, third-party claim that he breached the 1996 Settlement Agreement by bringing an action against Sandhu, Inc. However, he only contested the issue of his individual liability to Sandhu, Inc., for his breach of the Settlement Agreement. On appeal, we did not reach the merits of Baldev's argument. Rather, we remanded to the district court on the issue of whether the district court erred by finding that the Trust was barred from bringing this action by the 1996 Settlement Agreement. Our concern centered on the issue of whether the Trust's beneficiaries and remaindermen were signatories to the 1996 Settlement Agreement.[1]

On remand, the district court revisited its summary judgment ruling and on April 15, 2002, granted summary judgment to Sandhu, Inc. on its third-party complaint against Baldev for breaching the 1996 Settlement Agreement. The district court noted that the Trust was not in existence at the time the Settlement Agreement was signed, and, therefore, even if Baldev had signed the Agreement as Trustee, that signing was of no practical effect. Moreover, the district court noted that Baldev's was really contesting his own, individual liability to Sandhu, Inc., for breaching the Settlement Agreement.

Baldev then filed this appeal.

---

1. As it turned out, our concerns were not warranted. The record in this appeal contains the 1996 Settlement Agreement. Our examination of the Agreement shows that the Trust was neither a party nor a signatory to the Agreement. App. 191–205.

## II.

In his appeal, Baldev argues that the district court erred by granting summary judgment against Baldev individually on Sandhu, Inc.'s, third-party complaint that Baldev breached the 1996 Settlement Agreement by bringing this litigation because there are genuine issues of material fact as to the scope of the 1996 Settlement Agreement. He also argues that the district court erred by granting attorneys' fees, costs and expenses to Sandhu, Inc.

### A. Scope of the 1996 Settlement Agreement.

Baldev argues that a factual dispute exists as to the scope of the 1996 Settlement Agreement. Specifically, he argues that the Agreement did not preclude his bringing this litigation against Sandhu, Inc. Therefore, he claims that the district court improperly granted summary judgment to Sandhu, Inc.

The 1996 Settlement Agreement contains a Mutual Release, which provides:

In exchange for the valuable consideration described in paragraph 1 and 2 above, each party, on behalf of himself, herself or itself in all capacities, and, to the full extent that he, she or it can do so, on behalf of his, her or its heirs, successors, assigns and representatives does hereby agree, warrant and covenant to RELEASE, ACQUIT and FOR-EVER DISCHARGE each other party form, and further hereby does agree, warrant and covenant NOT TO SUE each other party for, any and all claims, demands, suits, liabilities, losses, damages, and causes of action, whether legal or equitable in nature, known or unknown, arising out of related to the subject matter made the basis of the Litigation by, between, against, and among the parties that have been asserted or could have been asserted. The parties agree that, in negotiating the terms of this Settlement Agreement, each has specifically bargained for the release of all such claims, demands, suits, liabilities, losses, damages, and causes of action, legal or equitable, that were or could have been asserted in the Litigation, including any of those that may be unknown, undiscovered and/or unanticipated.

App. at 194. As noted earlier, this Settlement Agreement was part of a divorce action between Sohan Sandhu (Baldev's and Jatinderpaul's father) and Sohan's first wife, Surjit Kaur Sandhu (Baldev's mother). Among the putative marital assets were the assets of Sandhu, Inc. Baldev signed the Settlement Agreement as an individual. App. at 202.

The Settlement Agreement also contained a provision entitled "Miscellaneous Provisions" and Section B thereof provides:

This Settlement Agreement and the exhibits attached hereto contain the entire Agreement between the parties and supersede any and all prior agreements, arrangements, negotiations, discussions, and understandings between the parties relating to the subject matter. This paragraph does not change or modify the terms or effectiveness of any prior written agreements in existence between any of the parties hereto, including without limitation the Agreement dated February 4, 1993 or the Stock Purchase Agreement dated May 31, 1995, attached hereto as Appendix I and Appendix II, respectively. No oral understandings, statements, promises, or inducements contrary to the terms of the Settlement Agreement and the exhibits attached hereto exist. The Settlement Agreement cannot be changed, modified or terminated except in writing.

App. at 200.

In spite of the broad and inclusive language of the Release, which would bar

874

Baldev from asserting the claim he asserted in this litigation, Baldev argues that there is evidence that shows that there is a genuine issue of material fact as to the scope of the Agreement and whether the Agreement precluded him from bringing this lawsuit. First, he argues that his affidavit and the affidavit of Hugh M. Fain, III, the attorney who represented Baldev's mother in the divorce proceeding, show that there is an issue as to the scope of the Agreement. Specifically, he says in his affidavit that he delivered the February 26, 1992 Agreement (the Agreement under which Baldev says Sandhu, Inc., is required, five years after closing, to transfer two-thirds of Sandhu, Inc., stock to the Trust) to his father and, therefore, his father knew or should have known about the existence of the Agreement. He also says that in Fain's affidavit, Fain indicated that there was a dispute as to the scope of the 1996 Settlement Agreement and that three prior versions of the Agreement were drafted before the Texas court directed the parties to sign the final Agreement.

██ However, the language of the Release is clear and unambiguous and clearly barred Baldev from bringing this, or any other litigation, concerning the subject matter of the Settlement Agreement. Moreover, Baldev's affidavit is extrinsic evidence of something that he alleged happened prior to the execution of the 1996 Settlement Agreement, and, therefore, given the clear and unambiguous language of the Release, is barred by the parol evidence rule. *See Matlock v. Nat. Union Fire Ins. Co. of Pittsburgh,* 925 F.Supp. 468, 473 (E.D.Tex.1996) (citing Texas law); *Saul v. Midlantic Nat. Bank,* 240 N.J.Super. 62, 572 A.2d 650, 658 (1990). Significantly, Baldev does not even attempt to show how his affidavit would be admissible in the face of the parol evidence rule. In

addition, Fain's affidavit does not show anything at all, other than there were disputes over prior drafts of the Agreement. But, that is of absolutely no significance given that an agreement was eventually signed by all the parties which contained the clear and unambiguous Release at issue here.

Second, Baldev argues that the language in the Miscellaneous Provisions portion of the 1996 Settlement Agreement that says that "[t]his paragraph does not change or modify the terms or effectiveness of any prior written agreements in existence" shows that the parties intended to release only the claims in the divorce action and not waive the effectiveness of the February 26, 1992 transfer agreement. However, Baldev conveniently ignores the fact that the district court found, *inter alia,* that the alleged February 26, 1992 stock transfer agreement was invalid because Baldev lacked the authority to enter into the agreement on behalf of Sandhu, Inc. That finding is final because Baldev never filed an appeal from the district court's grant of summary judgment to Sandhu, Inc., on the original suit between Baldev and Sandhu, Inc. Therefore, the February 26, 1992 agreement could not be a "prior written agreement[ ] in existence."

Third, and finally, Baldev argues that a February 19, 1997 letter from Sandhu, Inc.'s, counsel, Warren Cole, to Fain in which Cole says "I trust that this ends this portion of the litigation," shows that Cole was anticipating that there were other unresolved issues between the parties that would necessitate further litigation. However, the letter refers to a Custodial Agreement, and Baldev never says what the Custodial Agreement is. More importantly, even if the Custodial Agreement is the 1996 Settlement Agreement, a statement or an opinion of a party's attorney cannot create an issue of material fact.

For all of these reasons, Baldev's claim that there is a genuine issue of material fact is without merit. The district court's finding that the Release barred Baldev from bringing this litigation was correct and its grant of summary judgment to Sandhu, Inc., was not error.

### B. Award of attorney's fees, costs and expenses.

Baldev argues that the district court erred by awarding attorney's fees to Sandhu, Inc.[2] According to Baldev, attorney's fees can be awarded only after a showing that the lawsuit was frivolous or brought in bad faith. However, Baldev claims that there is no evidence that his lawsuit was frivolous or instituted in bad faith.

■ Baldev's argument is without merit. The 1996 Settlement Agreement contained an indemnity clause which provides:

For the same consideration, each party (the "Indemnifying Party") does hereby agree it INDEMNIFY, DEFEND, and HOLD HARMLESS each other party (Indemnified Party) from and against all liability, loss, cost, damage or expense (including attorney's fees, costs for appeal and supersedeas bonds, and cost of investigating defending, satisfying, attempting to settle and, if applicable, settling any claims, demands and causes of action) in connection with any claims, demands and causes of action asserted at any time or times against the indemnified Party or Indemnified Parties by any person claiming by, through, or under or on behalf of any Indemnifying Party that relate to in any way arise out or under or in connection with the Litigation. As used in this paragraph, the term "person" means and includes any individual, firm, corporation, partnership, joint stock company, joint venture,

business Trust, voluntary association, government or any department or agency thereof, and any other entity.

App. at 195. It is apparent to us that the district court awarded fees, costs and expenses to Sandhu, Inc., because of this indemnity provision. Therefore, his argument that Sandhu, Inc., is not entitled to fees, costs and expenses because his lawsuit was not frivolous or instituted in bad faith is beside the point. Strangely, Baldev does not bother to even mention the indemnification provision, nor does he argue that the indemnity provision does not provide for the award of fees, costs and expenses. Therefore, the award of attorney's fees was proper under the indemnity provision of the 1996 Settlement Agreement.

### III.

For the above reasons, we will affirm the district court.

---

**2.** He does not contest the amount or reasonableness of the fees, costs and expenses.